IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ALAIN ALCIS, a minor, by his parent and natural guardian, Yolette Alcis, and YOLETTE ALCIS,** <br>      Plaintiffs, <br><br> v. <br><br> **THE SCHOOL DISTRICT OF PHILADELPHIA, and THE SCHOOL REFORM COMMISSION,** <br>      Defendants. | **CIVIL ACTION** <br><br><br><br><br> **NO. 16-1684** |

**DuBois, J.**                                                                                                        **December 12, 2016**

## MEMORANDUM

### I. INTRODUCTION

This is a civil rights case arising from the alleged sexual assault of minor plaintiff Alain Alcis by another student while using the bathroom at his middle school. Plaintiffs assert *Monell* claims under 42 U.S.C. § 1983 against defendants the School District of Philadelphia and the School Reform Commission, alleging that defendants violated Alain's right to bodily integrity as protected under the Due Process Clause of the Fourteenth Amendment.

Presently before the Court is defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint. For the reasons that follow, defendants' Motion to Dismiss is denied.

### II. BACKGROUND

The facts as alleged in the Second Amended Complaint are as follows. On or around January 25, 2012, minor plaintiff Alain Alcis, a mentally challenged student, was a sixth-grade student at Warren G. Harding Middle School. Sec. Am. Compl. ¶¶ 10, 14. That day, a sixth-grade teacher named Ms. Furley, a non-party, escorted Alain and another boy identified as Benjamin to the boys' bathroom at the school. *Id.* at ¶¶ 14-15. Alain and Benjamin went into the bathroom

alone, while Ms. Furley stayed outside.  *Id.* at ¶ 16.  Once in the bathroom, Benjamin allegedly "removed Alain Alcis' pants and put his penis in Alain Alcis' buttocks."  *Id.* at ¶ 18.  Plaintiffs allege that this assault caused various injuries to Alain, including, *inter alia*, "fear and fright, anxiety, mental anguish, [and] post-traumatic stress disorder."  *Id.* at ¶ 19.

The Second Amended Complaint alleges that defendants' policies provide "that only one student shall use a bathroom at a time."  *Id.* at ¶ 13.  The Complaint further avers that "[d]espite their awareness of the risk of sexual assault, policymakers within defendant School District of Philadelphia and School Reform Commission either deliberately chose not to train their employees, including Ms. Furley, regarding policies for taking pupils to the bathroom, or acquiesced in a longstanding practice or custom of inaction in this regard."  *Id.* at ¶ 39.

Plaintiffs initially filed this action in the Court of Common Pleas, Philadelphia County, on September 9, 2015, asserting state tort claims against defendants.  Plaintiffs then filed an Amended Complaint which alleged that defendants' negligent acts violated unspecified "federal codes."  Defendants removed the case to this Court on April 8, 2016, based on their conclusion that this allegation raised a potential federal claim under § 1983.  This Court then granted plaintiffs' request for leave to file a Second Amended Complaint.  Plaintiffs filed their Second Amended Complaint on July 14, 2016.

The Second Amended Complaint contains a single count, entitled "Civil Rights."  In support of this claim, plaintiffs allege that defendants, acting under color of state law, violated Alain's "substantive due process right to bodily integrity, which is secured by the Fourteenth Amendment to the Constitution of the United States," and therefore are liable under § 1983.  Sec. Am. Compl. at ¶ 25.  Plaintiffs no longer assert state tort claims against defendants.

Defendants filed a Motion to Dismiss the Second Amended Complaint under Federal Rule

of Civil Procedure 12(b)(6) on July 28, 2016. Plaintiffs filed their Response on August 18, 2016. The Motion to Dismiss is ripe for review.

### III. APPLICABLE LAW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A district court first identifies those factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded. *Iqbal*, 556 U.S. at 679. The court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether it states a plausible claim for relief. *Id.*

### IV. DISCUSSION

To plead a claim under 42 U.S.C. § 1983, a plaintiff must allege that the defendant, acting under color of state law, deprived him of a right secured by the United States Constitution or federal law. 42 U.S.C. § 1983; *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49-50 (1999). In this case, both defendants are municipal entities which are subject to liability under § 1983. *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658, 690 (1978). "[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. Rather, to state a claim against a municipal entity under § 1983, a complaint must allege (1) a constitutional violation by a state actor (2) that was caused by a municipal policy or custom. *Id.* at 694; *see also Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 237 (3d Cir. 2013); *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 240 (3d Cir. 2016) ("The threshold question in any § 1983 lawsuit is whether the plaintiff has sufficiently alleged a deprivation of a constitutional right.").

In their Motion to Dismiss and Reply Brief in Support of their Motion, defendants argue that plaintiffs do not plead a claim for municipal liability under § 1983 because (1) they do not adequately allege a violation of a constitutional right under the state created danger theory and (2) they fail to allege a municipal policy or custom as the cause of that violation.[1]  The Court will address each argument in turn.

### A. Constitutional Violation Under the State-Created Danger Theory

Plaintiff alleges that defendants' violated Alain's right to bodily integrity under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  The Due Process Clause of the Fourteenth Amendment protects both the procedural due process rights of individuals and "individual liberty against certain government actions regardless of the fairness of the procedures used to implement them."  *L.R.*, 836 F.3d at 241 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)).  While generally "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause," the Third Circuit recognizes the state-created danger theory as an exception to this rule.[2]  *Id.* at 241-42 (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Serv.*, 489 U.S. 189 (1989)) (internal quotation marks omitted)).

To proceed on a state-created danger claim, a plaintiff must aver the following elements:

---

[1] Defendants also argue that plaintiff Yolette Alcis does not assert any direct claims on her behalf and that any future claims would be time-barred.  Defs.' Mem. Supp. Mot. 22.  Because plaintiffs have not asserted any claims on behalf of Yolette Alcis, the Court does not address this issue.

[2] Another exception to the rule is the "special relationship" theory of liability. *See, e.g.*, *Youngberg v. Romeo*, 457 U.S. 307 (1982) (articulating the special relationship exception in the context of an involuntarily institutionalized person).  Plaintiffs do not argue that the Second Amended Complaint alleges liability under a special relationship theory and, as defendants correctly argue, no special relationship exists between a student and a school.  *D.R. v. Middle Bucks Area Vo. Tech. Sch.*, 972 F.2d 1364, 1373 (3d Cir. 1992) (en banc) (finding no special relationship); Defs.' Mem. Supp. Mot. 4.

4

> (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's action, as opposed to a member of the public in general; and (4) a state actor affirmatively uses his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006) (internal quotation marks and citations omitted).

Defendants argue that plaintiffs have not pled sufficient facts to satisfy any of the four elements of a state-created danger claim. The Court analyzes each element in turn.

### 1. Foreseeable and Direct Harm

The first element of a state-created danger claim requires a plaintiff to aver that the harm he suffered "was a foreseeable and a fairly direct result of the state's actions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 908 (3d Cir. 1997). This element has two components: foreseeability and causation.

To satisfy the foreseeability component, the United States Court of Appeals for the Third Circuit has held that the plaintiff must "allege an awareness on the part of the state actors that rises to [the] level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 238 (3d Cir. 2008). Although the plaintiff need not allege that the state actor knew of the risk of the particular harm that plaintiff ultimately suffered, the plaintiff must at least aver an awareness of a risk of harm. *L.R.*, 836 F.3d at 245. On this issue, the Third Circuit in *L.R.* affirmed this Court's conclusion that the plaintiff in that case had sufficiently pled the foreseeability component because the risk of harm in releasing a kindergarten student to an unidentified person was foreseeable as both a matter of common sense and as a matter of experience to a kindergarten teacher. *Id.*; *see also Phillips*, 515

5

F.3d at 237 (stating that, in *Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir. 1996), "ordinary common sense and experience" created an awareness of risk).

To satisfy the causation component, the harm alleged must not be too random or attenuated from the state actor's conduct. *See L.R.*, 836 F.3d at 245-46 (affirming this Court's conclusion that the plaintiff had adequately alleged causation in averring that teacher released the student to the woman and the assault occurred the same day); *see also Sciotto v. Marple Newton Sch. Dist.*, 81 F. Supp. 2d 559, 565 n. 8 (E.D. Pa. 1999) (stating that the appropriate causation inquiry is "whether the state actor placed the plaintiff in a bullet's likely path").

Defendants argue that the Second Amended Complaint does not allege that Ms. Furley "knew, or should have known, that Benjamin would assault Alcis when they were in the bathroom together." Defs.' Mem. Supp. Mot. 19-20; Defs.' Reply 4. In response, plaintiffs contend that "[i]t is a matter of common sense that a special needs child faces inherent danger" when unsupervised with another student and that "[a] reasonable teacher . . . would have foreseen an injury to [Alain]." Pls.' Resp. 13.

The Court concludes that plaintiffs have sufficiently pled that the harm suffered by Alain was foreseeable. The Second Amended Complaint avers an awareness of a risk of harm by Ms. Furley by stating that she escorted two boys, one of whom was mentally challenged, to the bathroom and allowed them in the bathroom together without supervision. That this situation created a risk of harm to one of the boys is both matter of common sense and a matter of experience for teachers in a middle school, particularly those who work with mentally challenged students who may require additional protection from harm. To buttress this allegation, plaintiffs also aver that defendants had a policy prohibiting bathroom use by more than one student at a time. Sec. Am. Compl. ¶ 13. While the Second Amended Complaint does not explicitly state that this policy was in

place because of a risk of sexual assault, it does allege that defendants failed to train their employees on this policy "[d]espite their awareness of the risk of sexual assault." Sec. Am. Compl. ¶ 39.

The Court also concludes that the Second Amended Complaint sufficiently alleges that the harm caused to Alain by Benjamin was "a fairly direct result" of Ms. Furley's action. It is alleged that Ms. Furley took the two boys to the bathroom together and stood outside while the boys were in the bathroom alone, and the assault occurred while the boys were in the bathroom. There is no "randomness and attenuation" between the allegations of Ms. Furley's action and Benjamin's assault of Alain.

### 2. State Actor's Action Shocks the Conscience

"[T]he level of culpability required for behavior to shock the conscience largely depends on the context in which the action takes place." *L.R.*, 836 F.3d at 246. In settings "where deliberation is possible and officials have time to make unhurried judgments, deliberate indifference is sufficient." *Id.* (contrasting this setting to "hyperpressurized environment" where the intent to harm is required) (internal quotation marks and citation omitted). Deliberate indifference is generally the standard for determining whether conduct "shocks the conscience" in a school setting. *See id.*; *see also Hillard v. Lampeter-Strasburg Sch. Dist.*, Civ. No. 03-2198, 2004 WL 1091050, at *4 (E.D. Pa. May 13, 2004). The Third Circuit has defined deliberate indifference as "a conscious disregard of a substantial risk of serious harm." *Vargas v. City of Phila.*, 783 F.3d 962, 973-74 (3d Cir. 2015) (internal quotation marks and citation omitted). "Deliberate indifference may exist without actual knowledge of a risk of harm when the risk is so obvious that it should be known." *L.R.*, 836 F.3d at 246 (internal quotation marks and citation omitted).

The Court concludes that the deliberate indifference standard applies in this case. There are no allegations that Ms. Furley made her decision in anything other than a typical school setting with sufficient time to deliberate. Under this standard, the Court concludes that plaintiffs have adequately alleged a risk of serious harm that was "so obvious" that it should have been known to Ms. Furley. The Second Amended Complaint avers that Ms. Furley allowed two middle school boys, one who was mentally challenged, to use the bathroom together. As noted above, the risk of harm in this situation is a matter of both common sense and the experience of a middle school teacher who works with mentally challenged students who may require additional protection from harm. Furthermore, the alleged policy prohibiting the bathroom use permitted by Ms. Furley supports the conclusion that the risk of danger to students using the bathroom together was an obvious risk that should have been known to Ms. Furley. Thus, the Second Amended Complaint alleges that Ms. Furley acted with deliberate indifference, and plaintiffs have sufficiently pled that her conduct shocks the conscience.

        3. <u>Foreseeable Victim</u>

The third element of a state-created danger claim requires "a relationship between the state and the plaintiff . . . such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's action, as opposed to a member of the public in general . . . ." *Bright*, 443 F.3d at 281.

The Court concludes that plaintiffs have pled sufficient facts to establish this element. The Second Amended Complaint alleges that Ms. Furley, a teacher at the middle school, was supervising Alain and Benjamin on their trip to the bathroom. Sec. Am. Compl. ¶¶ 14-15. Her alleged actions put only Alain and Benjamin at risk of harm—a

sufficiently "discrete class" to satisfactorily plead this element of a state-created danger claim. *Bright*, 443 F.3d at 281.

### 4. Affirmative Use of Authority

The fourth element of a state-created danger claim, the affirmative use of authority, requires that "the state actor used his or her authority in a way that created a danger to the citizen or rendered the citizen more vulnerable to danger than had the state not acted at all." *Bright*, 443 F.3d at 281. The Third Circuit has articulated a useful approach to determining whether an alleged action should be characterized as an affirmative act, which may result in liability, or an omission, which may not. *L.R.*, 836 F.3d at 243. First, the Court "evaluate[s] the setting or the 'status quo' of the environment before the alleged act or omission occurred, and then . . . ask[s] whether the state actor's exercise of authority resulted in a departure from that status quo." *Id.* Applying this approach in *L.R.*, the Third Circuit evaluated the setting as "a typical kindergarten classroom," where children "are closely supervised by their teacher," where "[t]heir freedom of movement is restricted. Indeed, they are not likely to use the bathroom without permission, much less wander unattended from the classroom." *Id.* Because the plaintiff in *L.R.* was thus "safe in her classroom unless and until her teacher . . . permitted her to leave," the defendant teacher's action resulted in a change to the status quo that exposed the plaintiff to harm. *Id*.

The Court concludes that Ms. Furley's action in taking Alain and Benjamin to the bathroom was an affirmative use of her authority that created a danger to Alain. While the setting in this case is a middle school, not a kindergarten classroom such as in *L.R.*, plaintiffs allege that, like the students in *L.R.*, Alain and Benjamin were restricted in their movement outside of the classroom—they went to the bathroom under the supervision of a

9

teacher.  Sec. Am. Compl. ¶¶ 14-15.  Like the teacher in *L.R.*, Ms. Furley had the authority to supervise students on trips to the bathroom, and she used this authority to escort Alain and Benjamin to the bathroom at the same time while she remained outside, rather than requiring that only one student use the bathroom at a time.

Ms. Furley's actions are distinguishable from those of the school officials in *Morrow v. Balaski*, 719 F.3d 160 (3d Cir. 2013), and *Brown v. School District of Philadelphia*, 456 Fed. Appx. 88 (3d Cir. 2011), two cases cited by defendants in support of their Motion. Defs.' Mem. Supp. Mot. 16-17.  In *Morrow*, two students sued the school district under § 1983 for failing to protect them from harassment and physical assault by another student. 719 F.3d at 163.  The Third Circuit found that the school district was not liable for permitting the student accused of harassment to return to school after a suspension—despite contrary school policy—because allowing the return was "passive inaction" rather than an affirmative act.  *Id.* at 178-79.  In *Brown*, the Third Circuit similarly found no affirmative act by the school district where a special-education student was not provided with one-on-one supervision as promised and the student was sexually assaulted by other students at school.  456 Fed. Appx. at 89-91.  In each case, school officials did not intervene to change the environment encountered by the plaintiff students.  *See L.R.*, 836 F.3d at 243-44 (distinguishing a "failure to intervene" in *Morrow* from "creat[ing] or increas[ing] the risk of harm" by releasing a student to a stranger in *L.R.*).  Plaintiffs do not allege that Ms. Furley violated Alain's constitutional rights by not intervening during the assault; rather, plaintiffs allege that by escorting the two boys to the bathroom together, and allowing them to be in the bathroom together and unsupervised, Ms. Furley created the situation in which Alain was exposed to harm.

Because plaintiffs have alleged facts to support each element of a state-created danger claim, the Court concludes that plaintiffs have sufficiently pled that a constitutional violation occurred, the first requirement for a *Monell* claim. The Court need not determine whether qualified immunity would apply to Ms. Furley because she is not a party to this case.

### B. Municipal Liability for Failing to Train or Supervise

The Court must next determine whether plaintiffs have sufficiently pled the second requirement of a *Monell* claim—that the alleged constitutional violation was caused by a municipal policy or custom. The Third Circuit has recognized that a plaintiff may state a claim for municipal liability where the alleged policy or custom "concerns a failure to train or supervise municipal employees" if the plaintiff avers "that the failure amounts to a deliberate indifference to the rights of persons with whom those employees will come into contact." *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999) (internal quotations and citation omitted). "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation omitted). Thus

"A pattern of similar constitutional violations by untrained [or unsupervised] employees is 'ordinarily necessary' to demonstrate deliberate indifference . . . ." *Id.* at 62. However, a "single violation" may be enough to show deliberate indifference in specific circumstances where the consequences of failing to train or supervise are "highly predictable." *Id.* The Supreme Court provided a hypothetical example of one such specific circumstance by describing a city that knows its police officers will arrest fleeing felons and provides them with firearms, but does not train them

11

on the constitutional limits of deadly force.  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 n.10 (1989) ("*Canton*").

Defendants contend that plaintiff has not pled a pattern of constitutional violations and has not alleged any facts supporting defendants' alleged failure to train or supervise its employees.  It is correct that plaintiffs do not state specifically in the Second Amended Complaint whether their *Monell* claim for failure to train or supervise is brought under a single-violation theory or a pattern of violations theory.  Nevertheless, the Court concludes that plaintiffs have sufficiently alleged that the constitutional violation allegedly suffered by Alain was caused by defendants' failure to train or supervise its employees and that defendants were deliberately indifferent to Alain's constitutional rights in failing to train or supervise their employees on their policy for taking students to the bathroom.

First, the Court concludes that plaintiffs adequately allege a deficiency or omission in defendants' training or supervision of their employees.  Plaintiffs state that the policymakers of the defendants failed to train or supervise their employees, "including Ms. Furley, regarding policies for taking students to the bathroom."  *Id.* at ¶¶ 39.  *See Hall v. Raech*, Civ. No. 08-5020, 2009 WL 811503, at *5 (E.D. Pa. Mar. 25, 2009) (finding adequate pleading where plaintiff alleged that defendants "failed to train . . . officers to distinguish between criminal activity and medical emergencies") (quotation marks and citation omitted); *Tirado v. Montgomery Cnty., Pa.*, No. 12-CV-0052, 2013 WL 1285487, at *8 (E.D. Pa. Mar. 29, 2013) (finding adequate pleadings with respect to deficiency where plaintiff averred that defendant's "training and supervision [was] deficient in the proper and improper use of physical force upon inmates").

Second, the Court concludes that plaintiffs have pled that the deficient training or supervision caused the harm Alain suffered—plaintiffs allege that Alain's injuries were "a direct

and proximate result . . . of the conduct of all defendants." Sec. Am. Compl. ¶ 19. *See Hall*, 2009 WL 811503, at *5 (finding that the causation element of a *Monell* claim was satisfied where plaintiff asserted that "the failure to adequately train officers 'resulted' in the violation of his constitutional rights").

Finally, plaintiffs have alleged circumstances in which a constitutional violation was a "highly predictable" result of defendants' failure to train or supervise their employees. The Second Amended Complaint avers that defendants had a policy which limited the circumstances in which students were allowed to use the bathroom. Sec. Am. Compl. ¶ 13. As the teacher responsible for supervising Alain and Benjamin on the trip to the bathroom, Ms. Furley was responsible for enforcing this policy. *Id.* at ¶ 15. "Despite their awareness of the risk of sexual assault," defendants did not train or supervise teachers in enforcing this policy. *Id.* at ¶ 39. In sum, plaintiffs allege that defendants were aware of a risk of sexual assault involved when students used the bathroom at the same time and had a policy in place to prevent this situation from occurring. A sexual assault between two students in a bathroom together and unsupervised is thus a highly predictable consequence of failing to train or supervise the teachers in charge of enforcing this policy.

The Court thus concludes that plaintiffs have adequately pled the elements of a *Monell* claim against defendants. *See Foulke v. McCloud*, No. 13-5458, 2014 WL 47726, at *6 (D.N.J. Jan. 7, 2014) (stating that a "plaintiff's cause of action against [the defendant] can proceed absent a pattern of violations under a single violation theory").

V.   **CONCLUSION**

For the foregoing reasons, defendants' Motion to Dismiss is denied. An appropriate order follows.