**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **A.A., a minor, by his parent and natural guardian, Yolette Alcis, and YOLETTE ALCIS,** | **CIVIL ACTION** |
| **Plaintiffs,** | |
| **v.** | **NO.  16-1684** |
| **THE SCHOOL DISTRICT OF PHILADELPHIA, and THE SCHOOL REFORM COMMISSION, Defendants.** | |

**DuBois, J.**                                                    **November 19, 2020**

<u>**MEMORANDUM**</u>

## I.   INTRODUCTION

This case arises from the alleged sexual assault of a student, minor plaintiff, A.A., by another student while using the bathroom at Warren G. Harding Middle School in the School District of Philadelphia.  In their Second Amended Complaint, Plaintiffs, A.A. and his mother, Yolette Alcis, assert claims under 42 U.S.C. § 1983 against defendants the School District of Philadelphia (the "School District") and the School Reform Commission, alleging that defendants violated A.A.'s right to bodily integrity as protected by the Due Process Clause of the Fourteenth Amendment.

Presently before the Court is defendants' Motion for Summary Judgment.  For the reasons that follow, defendants' Motion for Summary Judgment is granted in part and denied in part.

## II.   BACKGROUND[1]

On January 25, 2012, minor plaintiff, A.A., was an eleven-year-old student with intellectual disabilities at Warren G. Harding Middle School (the "School").  Defs.' Statement of Material Facts ("Defs.' SMF") ¶ 3; Pls.' Ex. C at 5.  Benjamin, who allegedly assaulted A.A, "was also a student with intellectual disabilities in [A.A.'s] class in January of 2012."  Defs.' SMF ¶ 4.  In 2012, A.A.'s classroom was supervised by three adults: (1) a "classroom assistant," Denise Fairy-Coston; (2) another "classroom assistant," "Ms. Saylor"; and (3) the teacher, "Ms. Louis."  Fairy-Coston Dep. 11:14–19, 45:11–23.

### A.   The Alleged Assault

On January 25, 2012, Ms. Fairy-Coston escorted A.A. and Benjamin to a bathroom at the School.  A.A. Dep. 19:14–16; Fairy-Coston Dep. 17:8–24:14.  A.A. testified that, after she escorted the two boys to the bathroom, Ms. Fairy-Coston stood outside in the hallway behind a closed door.  A.A. Dep. 20:9–21.  Ms. Fairy-Coston, on the other hand, testified that the bathroom door was open, and she stood in the open doorway when A.A. and Benjamin used the bathroom.  Fairy-Coston Dep. 29:21–30:3.  A.A. claims that, while in the bathroom, Benjamin sexually assaulted him.  Pls.' Ex. C at 6.

"[D]uring his deposition A.A. did not want to talk about the sexual assault that occurred inside the bathroom."  Pls.' Counterstatement of Material Facts ("Pls.' SMF") ¶ 5.  However, A.A talked about the alleged assault with Amanda Peguero-Marquez, MS, LPC of Women Organized Against Rape ("WOAR").  A.A. "attended 6 counseling sessions at WOAR."  Pls.' Ex. C at 2.  The "[i]nitial goals for [his] treatment [at WOAR] included psycho-education regarding safe touch and body boundaries and reducing the negative effect sexual abuse has had on [his] life and

---

[1]   The facts are presented in the light most favorable to plaintiffs.  Disputed facts are noted as such.  Where appropriate, plaintiffs and defendants' statements of material facts are cited in lieu of a direct citation to the record.

functioning." *Id.* On August 23, 2012, during a "Counseling Intake" with Peguero-Marquez, A.A. stated: "Benjamin who was in his class pulled his pants down and then told him to lay down on the floor and then put his penis in his butt.  [A.A] reports this happened in January 2012." *Id.* at 6.

Although A.A. "did not want to [testify] about the sexual assault," he "testified about details . . . after the assault."  Pls.' SMF ¶ 5.  He testified that, after he left the bathroom on January 25, 2012, he "tried to tell [Ms. Fairy-Coston] what happened," but "[s]he didn't want to listen to [him]." A.A. Dep. 21:5–22:11.  He also testified that Ms. Fairy-Coston told him "I'll talk to you later," but "she never did." *Id.* at 22:1–3.  Ms. Fairy-Coston did not "recall anything special happening that day that was different than other days."  Fairy-Coston Dep. 24:15–25:19.

### B.  The School's Bathroom Policy

Ms. Fairy-Coston testified that "the school's policy and practice was for the teachers to escort the special needs students to the bathroom and to then stand in the doorway of the bathroom with the door open so that the teacher could monitor both the students in the bathroom and monitor any students waiting outside of the bathroom." *Id.* at 17:14–17:23.  "The purpose of this practice was to foster the safety of special needs students in the bathroom."  Defs.' SMF ¶ 16.  The School's bathroom was locked while not in use and "[o]nly school staff ha[d] the key."  Fairy-Coston Dep. 46:16–23.

Ms. Fairy-Coston also testified that "one the reasons why you keep the door open is to make sure there's nothing [] bad happening in the bathrooms." *Id.* at 29:14–17.  She testified that "a reason to keep the door open [was] to actually keep the special ed kids protected from each other." *Id.* at 29:3–6.  She knew "kids do bad stuff in bathrooms," and was "aware that that happened in [her] career at the School District." *Id.* at 47:7–11.  A.A. testified that, in violation of the School's

policy, "the door was always closed" when Ms. Fairy-Coston escorted him to the bathroom.  Pls.'

SMF ¶ 11; A.A. Dep. 20:16–23.

Finally, Ms. Fairy-Coston testified that: (1) she "wasn't trained" to follow the School's

bathroom policy; (2) she never received "any type of training regarding prevention of sexual

assaults at the school"; and (3) she "did not receive any special training to get [her] position."

Fairy-Coston Dep. 12:5–8, 20:6–17, 30:14–17.

### C.  The Present Action

Plaintiffs initiated the present action on September 9, 2015, filed an Amended Complaint on

March 16, 2016, and filed a Second Amended Complaint on July 14, 2016.  Plaintiffs' Second

Amended Complaint contains a single count, entitled "Civil Rights."  In support of this claim,

plaintiffs allege that defendants violated A.A.'s "substantive due process right to bodily integrity,

which is secured by the Fourteenth Amendment to the Constitution of the United States," and

therefore are liable under 42 U.S.C. § 1983.  Sec. Am. Compl. ¶ 25.

On January 24, 2020, defendants filed a Motion for Summary Judgment.  Plaintiffs filed

their response on February 18, 2020, and defendants filed a reply on February 25, 2020.  The

motion is thus ripe for decision.

## III.    LEGAL STANDARD

The Court will grant a motion for summary judgment if "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  A fact is

material when it "might affect the outcome of the suit under the governing law."  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party."  *Id.*

The Court's role at the summary judgment stage "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether . . . there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249.  However, the existence of a mere "scintilla" of evidence in support of the nonmoving party is insufficient.  *Id.* at 252.  In making this determination, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).  The party opposing summary judgment must, however, identify evidence that supports each element on which it has the burden of proof.  *Celotex Corp.*, 477 U.S. at 322.

## IV.  DISCUSSION

Under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), "a municipality can only be liable under Section 1983 when a constitutional injury results from the implementation or execution of an officially adopted policy or informally adopted custom." *Wilson v. City of Phila.*, 177 F. Supp. 3d 885, 908 (E.D. Pa. 2016) (citing *Monell*, 436 U.S. at 694).  Therefore, a § 1983 claim against a municipal entity requires "(1) a constitutional violation by a municipal actor that (2) was caused by a municipal policy or custom." *Boyle v. City of Phila.*, No. 17-262, 2020 WL 4459131, at *9 (E.D. Pa. Aug. 4, 2020) (DuBois, J.) (citing *Monell*, 436 U.S. at 694).

In their Motion for Summary Judgment defendants argue that plaintiffs' § 1983 claim fails because (1) "there is no admissible evidence that the alleged assault occurred"; (2) plaintiffs "cannot prove that there was any underlying constitutional violation"; and (3) plaintiffs "cannot point to an actual policy or procedure that caused" the alleged constitutional violation.  Defs.' Mot. at 6, 9, 16.  Furthermore, defendants argue the School Reform Commission "no longer exists as a

distinct entity and it therefore must be dismissed from this action." *Id.* at 1 n.1.  The Court

addresses each argument in turn.

### A.  Admissible Evidence of Assault

"The rule in this circuit is that hearsay statements can be considered on a motion for

summary judgment if they are capable of being admissible at trial." *Fraternal Order of Police,*

*Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016).  Under Federal Rule of Evidence

803(4), a court may admit the following hearsay evidence: statements that are "(A) made for – and

[] reasonably pertinent to – medical diagnosis or treatment; and (B) describe[] medical history; past

or present symptoms or sensations; their inception; or their general cause."  Fed. R. Evid. 803(4).

"[T]his exception to the hearsay rule may apply to statements that are made to individuals other

than physicians."  *Borger-Greco v. AMTRAK*, No. 02-6862, 2005 WL 1320147, at *8 (E.D. Pa.

June 1, 2005); *see also Williams v. Gov't of Virgin Islands*, 271 F. Supp. 2d 696, 704 (D.V.I. 2003)

(statements made to counselor and social worker were admissible under Rule 803(4)).

A.A.'s statements to Peguero-Marquez, a Licensed Professional Counselor, described the

cause of his injury for the purpose of, and reasonably pertinent to, receiving treatment.  Thus, his

statements to Peguero-Marquez are "capable of being admissible at trial" under Rule 803(4) to

prove that an assault occurred.  *Fraternal Order of Police*, 842 F.3d at 238.

### B.  Constitutional Violation Under the State-Created Danger Theory

The Court next examines whether defendants had a constitutional duty to protect A.A. from

the alleged assault.  Plaintiffs argue they have raised a genuine dispute of material fact as to whether

the School District had a constitutional duty to protect A.A. under the "state-created danger theory."

Pls.' Resp. at 7–8.  The Court agrees with plaintiffs.

The Due Process Clause of the Fourteenth Amendment protects both the procedural due process rights of individuals and "individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 241 (3d Cir. 2016) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). While generally "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause," the Third Circuit recognizes the state-created danger theory as an exception to this rule. *Id.* at 241–42 (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Serv.*, 489 U.S. 189, 197 (1989)).

Under Third Circuit precedent, the essential elements of a state-created danger claim are as follows:

(1) the harm ultimately caused was foreseeable and fairly direct;

(2) a state actor acted with a degree of culpability that shocks the conscience;

(3) some relationship existed between the state and the plaintiff that renders plaintiff a foreseeable victim; and

(4) "a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all."

*Bennett v. Phila.*, 499 F.3d 281, 287 (3d Cir. 2007) (quoting *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006)).

### 1. Foreseeable and Direct Harm

The first element of a state-created danger claim requires that "the harm ultimately caused was a foreseeable and a fairly direct result of the state's actions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 908 (3d Cir. 1997). "[A] harm is foreseeable when a state actor has actual awareness, based on concrete information, of a risk of harm to an individual or class of individuals such that the actor is on notice that his or her act or failure to act significantly enhances that risk of

7

harm." *Gremo v. Karlin*, 363 F.Supp.2d 771, 784 (E.D. Pa. 2005).  A state actor may be aware of a risk of harm based on "ordinary common sense and experience."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 237 (3d Cir. 2008).  A harm is fairly direct when it is not "too random or attenuated from the state actor's conduct."  *L.R.*, 836 F.3d at 245–46.

In this case, "ordinary common sense and experience" for school employees may dictate that there was a foreseeable risk of harm in leaving two mentally challenged boys unsupervised in the bathroom together.  *Phillips*, 515 F.3d at 237.  Indeed, Ms. Fairy-Coston testified that "kids do bad stuff in bathrooms," and "one the reasons why you keep the door open is to make sure there's nothing [] bad happening in the bathrooms."  Fairy-Coston Dep. 29:14–17, 47:7–11.  Moreover, there is no randomness or attenuation between her taking the two boys to the bathroom and the assault that allegedly occurred in the bathroom.  Therefore, a reasonable jury could find that the harm A.A. suffered was a foreseeable and fairly direct result of Ms. Fairy-Coston's actions.

## 2.  Degree of Culpability That Shocks the Conscience

The second element of a state-created danger claim requires that "a state actor acted with a degree of culpability that shocks the conscience."  *Bennett*, 499 F.3d at 287.  "[T]he level of culpability required for behavior to shock the conscience largely depends on the context in which the action takes place."  *L.R.*, 836 F.3d at 246.  In settings "where deliberation is possible and officials have time to make unhurried judgments, deliberate indifference is sufficient."  *Id.* "The Third Circuit has defined deliberate indifference as a conscious disregard of a substantial risk of serious harm."  *Vargas v. City of Phila.*, 783 F.3d 962, 973–74 (3d Cir. 2015).  "Deliberate indifference may exist without actual knowledge of a risk of harm when the risk is so obvious that it should be known."  *L.R.*, 836 F.3d at 246.

In this case, the parties do not dispute that the deliberate indifference standard applies. Defs.' Mot. at 11; Pls.' Resp. at 11.  Under this standard, a reasonable jury could find that the risk of harm to mentally challenged students using the bathroom together without supervision was an "obvious" risk that Ms. Fairy-Coston should have known.  *L.R.*, 836 F.3d at 246.  Moreover, the School's policy required teachers to "stand in the doorway of the bathroom with the door open," Defs.' SMF 13, and A.A. testified that Ms. Fairy-Coston stood in the hallway with the bathroom door closed.  A.A. also testified that he "tried to tell [Ms. Fairy-Coston] what happened," but "[s]he didn't want to listen to [him]."  A.A. Dep. 21:5–22:11.  Thus, based on the current state of the record, the Court cannot conclude as a matter of law that Ms. Fairy-Coston did not "act[] with a degree of culpability that shocks the conscience."  *Bennett*, 499 F.3d at 287.

   3. <u>Foreseeable Victim</u>

The third element of a state-created danger claim requires "a relationship between the state and the plaintiff . . . such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's action, as opposed to a member of the public in general . . . ."  *Bright*, 443 F.3d at 281; *Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 172 (3d Cir. 2017) ("a student-athlete stands in such a relationship with the coaching staff"); *L.R.*, 836 F.3d at 247 (kindergarten class "satisfied [the third element] easily").

Ms. Fairy-Coston was supervising the two boys on their trip to the bathroom.  Her actions put only A.A. and Benjamin—a "discrete class of persons"—at risk of harm.  *Bright*, 443 F.3d at 281.  Therefore, a reasonable jury could find that A.A. was a foreseeable victim of Ms. Fairy-Coston's actions.

4.   Affirmative Use of Authority

The fourth element of a state-created danger claim requires that "the state actor used his or her authority in a way that created a danger to the citizen or rendered the citizen more vulnerable to danger than had the state not acted at all." *Id*.  "In clarifying the affirmative act requirement, the [Third Circuit] reasoned that . . . 'we find it useful to first evaluate the setting or the status quo of the environment before the alleged act or omissions occurred, and then ask whether the state actor's exercise of authority resulted in a departure from the status quo.'" *Lichtenstein v. Lower Merion Sch. Dist.*, 316 F. Supp. 3d 855, 870 (E.D. Pa. 2018) (quoting *L.R.*, 836 F.3d at 240).  For example, in *L.R.*, a teacher's decision to permit a kindergarten student to leave class with an adult, without verifying the adult's identity or authority to remove the child, "resulted in a drastic change to the classroom status quo" that exposed the student to harm.  *L.R.*, 836 F.3d at 244; *see also K.S. v. Sch. Dist. of Phila.*, No. 05-4916, 2007 WL 1009815, at *5 (E.D. Pa. Mar. 28, 2007) (denying summary judgment where the teacher allegedly selected a "sexually deviant five-year-old boy to escort his female classmate through an unmonitored area of school").

Plaintiffs argue, and defendants do not dispute, that "A.A. was safe until Ms. Fairy-Coston escorted A.A. and Benjamin to be in the bathroom alone."  Pls.' Resp. at 13.  Ms. Fairy-Coston's alleged decision to leave the two boys in the bathroom, without supervision, was an affirmative act which placed A.A. in greater danger than the "status quo" of remaining in his classroom, where three adults were present.  *L.R.*, 836 F.3d at 240.  Therefore, a reasonable jury could find Ms. Fairy-Coston's actions rendered A.A. more vulnerable to danger than had she not acted at all.

Because plaintiffs have raised a genuine dispute of material fact as to each element of a state-created danger claim, the Court concludes that a reasonable jury could find that a constitutional violation occurred, which is the first requirement of a *Monell* claim.

10

**C.  Constitutional Violation Caused By Municipal Policy or Custom**

The Court next determines whether defendants have shown there is no genuine dispute of material fact as to the second requirement of a *Monell* claim: that the alleged constitutional violation was caused by a municipal policy or custom.  Plaintiffs aver that the constitutional violation was caused by the School District's failure to train or supervise their employees "regarding policies for taking pupils to the bathroom."  Sec. Am. Compl. ¶¶ 39, 40.

1.  <u>Municipal Policy or Custom</u>

The Third Circuit has held that liability can be imposed on a municipal entity where the alleged policy, practice, or custom "concerns a failure to train or supervise municipal employees" by showing "that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact."  *Carter v. City of Phila*., 181 F.3d 339, 357 (3d Cir. 1999) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  "A pattern of similar constitutional violations by untrained [or unsupervised] employees is 'ordinarily necessary' to demonstrate deliberate indifference . . . ."  *Connick v. Thompson*, 563 U.S. 51, 62 (2011).  However, a "single violation" may be enough to show deliberate indifference where the consequences of failing to train or supervise were "highly predictable."  *Id.*

Plaintiffs do not argue that the School District engaged in a pattern of similar constitutional violations.  Therefore, the Court examines whether this case, which involves a single violation, presents circumstances where the consequences of failing to train or supervise were "highly predictable."  *Id.*

a.  <u>Failure to Train or Supervise</u>

A reasonable jury could find that the School District failed to train or supervise its employees on taking mentally challenged students to the bathroom.  Ms. Fairy-Coston testified that

11

she "did not receive any special training to get [her] position"; she "wasn't trained" to follow the

School's bathroom policy; and she never received "any type of training regarding prevention of

sexual assaults at the school."  Fairy-Coston Dep. 12:5–8, 20:6–17, 30:14–17.  Furthermore, A.A.

testified that, in violation of the School's policy, "the door was always closed" when Ms. Fairy-

Coston escorted him to the bathroom.  Pls.' SMF ¶ 11; A.A. Dep. 20:16–23.

### b.  Consequences of Failure to Train or Supervise

A reasonable jury could also find that A.A.'s injury was a "highly predictable" consequence

of the School District's alleged failure to train or supervise its employees on taking mentally

challenged students to the bathroom.  Significantly, Ms. Fairy-Coston testified that the purpose of

the School's bathroom policy was to (1) "to foster the safety of special needs students in the

bathroom," and (2) to ensure mentally challenged students, like A.A., were "protected from each

other."  Fairy-Coston Dep. 20:7–21:13, 29:3–6; Defs.' SMF ¶ 16.  Moreover, the fact that the

bathroom was locked while not in use and "[o]nly school staff ha[d] the key" supports the inference

that there was a "highly predictable" risk in allowing mentally challenged students to use the

bathroom together without supervision.

### 2.  Causation

To succeed on a claim for failure to train or supervise, a plaintiff must also show that the

defendants' allegedly inadequate training or supervision "has a causal nexus" to his injuries.  *Reitz*

*v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997).

A reasonable jury could find that the School District's alleged failure to train or supervise

caused A.A.'s injuries.  A jury could make this finding based on the evidence that (1) Ms. Fairy-

Coston "wasn't trained" to follow the School's bathroom policy, *see* Fairy-Coston Dep. 20:6–17;

(2) by standing outside a closed door—leaving A.A. and Benjamin unsupervised in the bathroom—

she did not follow the policy; and (3) Benjamin harmed A.A. while they were in the bathroom without supervision.

The Court thus concludes that a reasonable jury could find that plaintiffs satisfied all of the elements of a *Monell* claim against the School District.  Therefore, defendants' motion is denied to the extent it seeks summary judgment on plaintiffs' claims against the School District.

### D.  Existence of School Reform Commission

Defendants argue that the School Reform Commission ("SRC") "no longer exists as a distinct entity and it therefore must be dismissed from this action."  Defs.' Mot. at 1 n.1.  Plaintiffs have not responded to this argument.  The fact that the SRC no longer exists is therefore undisputed. *Weathers v. Sch. Dist. of Phila.*, 383 F. Supp. 3d 388, 392 n.1 (E.D. Pa. 2019) ("Defendants contend that the School Reform Commission ceased to exist . . . [t]he Court dismisses all claims against the School Reform Commission"); *Hamilton v. Apv Baker*, No. 04-913, 2006 WL 8438684, at *10 (E.D.N.C. May, 1, 2006) ("[B]ecause the fact that defendants [] no longer exist is not contested . . . dismissal of these corporate defendants is proper as a matter of law.").  The Court thus grants defendants' motion to the extent it seeks summary judgment on plaintiffs' claims against the SRC.

## V.   CONCLUSION

For the foregoing reasons, defendants' Motion for Summary Judgment is granted in part and denied in part.  The motion is denied to the extent it seeks summary judgment on plaintiffs' claims against the School District of Philadelphia.  The motion is granted to the extent it seeks summary judgment on plaintiffs' claims against the School Reform Commission.  An appropriate order follows.